MATTER OF P——

In DEPORTATION Proceedings

A-10595135
A-10381589

*Decided by Board November 21, 1958*

**Loss of citizenship—Service in foreign armed forces—Section 349(a)(3) of 1952 act applicable only when foreign military service commenced subsequent to December 24, 1952.**

(1) Dual national of United States and Italy who served in Italian armed forces from 1954 to 1956, having been physically present in Italy for more than ten years preceding service, is held expatriated under section 349(a)(3) and (b) of the act notwithstanding claim that service was involuntary by reason of conscription and that expatriating conduct would have been avoided had it not been for erroneous advice furnished by American consul in 1948. (See *Matter of P——*. Int. Dec. No. 994, which overrules this holding.)

(2) Where circumstances were same as above, except that military service commenced on June 25, 1952, and continued to 1954, the case is governed by section 401(c) of the Nationality Act of 1940; and absence of evidence rebutting claim of conscription requires conclusion that expatriation has not been established. *Nishikawa* v. *Dulles*, 356 U.S. 129.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Admitted as crewman—Remained longer than permitted (both aliens).

### BEFORE THE BOARD

**Discussion:** The special inquiry officer granted voluntary departure to L——P—— and directed that he be deported if he failed to depart voluntarily. The proceedings were terminated with respect to P——P——. Both cases were certified to this Board for final decision.

The respondents are brothers, 26 and 24 years old, respectively, who are natives of Italy and claim United States citizenship. P——P—— last entered the United States on August 15, 1956, and L——P—— on August 23, 1956. Neither had previously resided in this country. They were admitted temporarily as seamen and have since remained in the United States. The question to be determined is whether alienage has been established.

194

R——P——, father of the respondents, was born at Brooklyn, New York, on April 22, 1901, and accompanied his parents on their return to Italy in 1904. He served in the Italian army from November 10, 1920, until July 21, 1922, and from March 26, 1939, until August 19, 1939. About May 1921, during his first period of service, he took an oath of allegiance to Italy while under the age of 21. On April 13, 1948, he executed an affidavit before an American consular officer to explain his protracted foreign residence in which he stated that a United States passport was issued to him in 1930; that he was in the United States for a few months at that time; that he returned to Italy because of the illness of his wife; that he voted in an Italian election on June 2, 1946; and that he was desirous of returning to the United States as soon as possible to reside permanently.

P——P—— was born on June 25, 1932, and L——P—— on April 28, 1934. The American consular officer issued a certificate on May 10, 1948, to the effect that R——P—— expatriated himself as the result of taking an oath of allegiance to Italy during minority and confirming the oath after reaching majority by again serving in the Italian army during 1939 without protest, and that his children, including the respondents, had no claim to United States citizenship because they were born after the date of R——P——'s expatriation. This certificate was approved by the Department of State on April 11, 1950.

Assuming that R——P——'s action in 1939 divested him of United States citizenship retroactively to about 1922, he and the two respondents were in actuality citizens until 1939. However, the question of whether the respondents' citizenship could be thus extinguished is not important because we hold that the present record does not support a conclusion that R——P—— expatriated himself prior to June 2, 1946, when he voted in an Italian election. We believe this conclusion is required by *Mandoli* v. *Acheson*, 344 U.S. 133 (1952), in which the court indicated its approval of the position of a former Attorney General that service in the army of Fascist Italy and the taking of an oath of allegiance must be considered as having been under legal compulsion amounting to duress. Hence, R——P—— was still a citizen when the respondents were born and they acquired United States citizenship under section 1993 of the Revised Statutes (8 U.S.C. 6, 1926 ed.).

The remaining question is whether the respondents have become expatriated. L——P—— served in the Italian navy from May 1954, when he was 20 years old, until June 1956. P——P—— served in the Italian navy from July 15, 1952, until 1954. Both testified they were drafted. The special inquiry officer held that under section 349 of the Immigration and Nationality Act (8 U.S.C.

1481) L——P—— became expatriated and was deportable on the charge stated above, and that the Government failed to establish that P——P—— was an alien.

Subsection (a)(3) of section 349 of the Immigration and Nationality Act [8 U.S.C. 1481(a)(3)] provides that a person shall lose his United States nationality by entering, or serving in, the armed forces of a foreign state unless specifically authorized in writing by the Secretary of State and the Secretary of Defense. Subsection (b) of the same section [8 U.S.C. 1481(b)] provides that any person who performs any act specified in subsection (a) "shall be conclusively presumed to have done so voluntarily and without having been subjected to duress of any kind, if such person at the time of the act was a national of the state in which the act was performed and had been physically present in such state for a period or periods totaling ten years or more immediately prior to such act."

Counsel contends that the respondents would have been able to avoid service entirely in the armed forces of Italy because they would have come to the United States in 1948, if it had not been for the action of the American consular officer and the Department of State in holding that they had no claim to United States citizenship. Whether the two respondents would have come to the United States prior to their induction into the armed forces of Italy is a matter of conjecture. The case must be decided on the basis of the facts as they exist and not on what the situation might have been if the American consular officer had not issued the certificate of expatriation.

Counsel also contends that the ruling of the Department of State precluded the respondents from obtaining authorization for service in the armed forces of Italy from the Secretary of State and the Secretary of Defense in accordance with the provisions of section 349(a)(3) of the Immigration and Nationality Act. Under that statutory provision, service in the armed forces of a foreign state must be specifically authorized in writing by the Secretary of State and the Secretary of Defense "prior to such entry or service." The respondents did not apply for such authorization and, even if they had been recognized as citizens, there is no assurance that they would have been authorized to enter the armed forces of Italy. In any event, it is clear that, prior to their entry into the armed forces of Italy, they were not specifically authorized in writing to do so by the Secretary of State and the Secretary of Defense. Hence, the matter must be decided without reference to this exemption.

Counsel asserted that the Italian oath of allegiance taken by L——P—— was not a voluntary act, and he also referred to a statu

tory provision that nationality shall not be lost by a person under 21 through the naturalization of a parent if the child comes to the United States for permanent residence before his 25th birthday. These provisions are contained in paragraphs (1) and (2) of section 349(a) of the Immigration and Nationality Act and are not revelant to the cases of the respondents since the Government has not asserted that expatriation occurred under these paragraphs, and the only applicable provisions are those contained in paragraph (3) of that subsection and subsection (b). As a matter of fact, section 349(a)(1) is entirely irrelevant because the two respondents and R——P—— appear to have acquired dual citizenship in Italy and the United States at birth and no question is involved here regarding the Italian *naturalization* of any of them.

L——P—— comes clearly within the provisions of subsections (a)(3) and (b) of section 349 of the Immigration and Nationality Act. After the effective date of that act, he entered and served in the armed forces of a foreign state. Prior to entering the Italian navy, such service had not been specifically authorized in writing by the Secretary of State and the Secretary of Defense. At the time he entered the Italian navy, he possessed not only United States citizenship, but the citizenship of Italy by reason of his birth in that country. He had been physically present in Italy for over ten years immediately prior thereto, having lived there continuously from the time of his birth on April 28, 1934. Hence, under section 349(b) he is conclusively presumed to have performed his service in the armed forces of Italy "voluntarily and without having been subjected to duress of any kind." Accordingly, we hold that L——P—— became expatriated and that he is deportable on the charge stated above.

The other respondent, P——P——, was conscripted into the Italian navy on July 15, 1952, and served until 1954. The special inquiry officer terminated the proceedings in his case, holding that his service in the Italian navy was not voluntary and that the Government had failed to establish that he was an alien. Insofar as concerns section 401(c) of the Nationality Act of 1940 [8 U.S.C. 801(c), 1946 ed.], which was in effect from 1941 until December 23, 1952, we hold that it has not been established that P——P——'s entry into the Italian navy caused his expatriation. This conclusion is required in view of the statement in *Nishikawa* v. *Dulles*, 356 U.S. 129, 135, 137 (March 31, 1958), that the Government has the burden of proving by clear, convincing and unequivocal evidence that the act showing renunciation of citizenship was voluntarily performed.

The Service raised the question of whether P——P—— may have become expatriated under section 349 of the Immigration and Nationality Act which became effective on December 24, 1952. Sec-

197

tion 349(a)(3) provides for the expatriation of a United States national who thereafter enters or *serves* in the armed forces of a foreign state, and it is clear that this respondent did serve in the Italian navy after December 24, 1952. He is also within the literal terms of the conclusive presumption contained in section 349(b). However, we hold that these provisions are not binding on this respondent. He had *entered* the Italian navy prior to their effective date; section 401(c) of the Nationality Act of 1940 may have continued to operate in his case by reason of the savings clause in section 405(a) of the Immigration and Nationality Act (8 U.S.C. 1101, Note); and his continued service after December 24, 1952, did not divest him of citizenship since there is nothing to indicate that he could have secured his release from the Italian navy prior to the completion of his required period of service. The latter is consonant with the procedure previously followed in cases arising under section 401(c) of the Nationality Act of 1940 where it was held that a United States citizen who entered a foreign army prior to the effective date of that act (January 13, 1941) was not to be deemed expatriated by reason of completion of his term of enlistment or period of service subsequent to January 13, 1941 (*Matter of A——*, 2 I. & N. Dec. 304 (1945)). Accordingly, we hold that the Government has not established that P——P—— is an alien, and the special inquiry officer was correct in terminating the proceedings in his case.

**Order:** It is ordered that the special inquiry officer's orders concerning the two respondents be and the same are hereby affirmed.